W. J. KEW

*v.*

JOHN W. TRAINOR.

*Filed at Ottawa May 8, 1894.*

1. LEASE—*breach of covenant not to assign—rights of lessor.* A lease contained an agreement of the lessee that neither he nor his legal representatives would underlet said premises, or any part thereof, or assign the lease, without the written consent of the lessor, and then provided that if default should be made in any of the agreements or covenants of the lessee, (which included the covenant not to assign,) then the lessor should have the right to declare the term ended, and re-enter: *Held,* that this was not a mere covenant not to assign, but was a power of re-entry for a breach of a covenant, having the force of a condition.

2. A lease contained a covenant that neither the lessee nor his legal representatives would assign the same without the lessor's written consent, and provided for a forfeiture and right of re-entry by the lessor for the breach of any of the covenants. The lessee, with the written consent of the lessor, assigned the lease, with a stipulation that no further assignment should be made without like assent of the lessor: *Held,* that the lessor had the right to forfeit the term, and re-enter, for an assignment of the lease by the assignee, without his consent.

3. SAME—*rights and liabilities of assignee of lessee.* A party, by accepting the assignment of a lease, and agreeing to perform all the covenants and conditions of the lessee, becomes obligated to perform all the terms and conditions of the lease in as full and complete a manner as the original lessee; and when the assignee, in consideration of the lessor's written consent to the assignment, stipulates that no further assignment shall be made without the written consent of the lessor, and expressly agrees to perform all the covenants and conditions of the lease, he thereby assumes the position of the original lessee, and will have the same powers of the original lessee, and no other.

4. DEEDS—*rule of construction—intention.* It may be true that in the construction of deeds courts will incline to interpret the language as a covenant, rather than as a condition; but the intention of the parties to the instrument, when clearly ascertained, must control.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

Messrs OSBORNE BROS. & BURGETT, for the appellant:

The lessor has no right of re-entry for a breach of the covenant not to assign without his consent, unless the right is expressly reserved. The lease gave the lessor the right of re-entry in case of assignment by the lessee or his legal representatives. *Hague* v. *Ahrens*, 53 Fed. Rep. 583; *Ayer* v. *Emery*, 14 Allen, 67; *Hoyt* v. *Kimball*, 49 N. H. 522; *Paschall* v. *Passmore*, 15 Pa. St. 295; *Johnson* v. *Gurley*, 52 Texas, 222; *Board of Education* v. *Trustees*, 63 Ill. 204; *Gallaher* v. *Herbert*, 117 id. 160.

Courts always construe clauses in deeds as covenants, rather than conditions, if they can reasonably do so. See the above cases, and *Lynde* v. *Hough*, 27 Barb. 415; *Bloom* v. *Insurance Co.* 45 Wis. 622; *Livingston* v. *Stickles*, 7 Hill, 254; *Thornton* v. *Tramwell*, 39 Ga. 202.

The absence of a clause of re-entry, or a provision that in a certain event the estate shall cease, is important in determining whether the clause in a deed is a condition or a mere covenant. *Hoyt* v. *Kimball*, 49 N. H. 322; *Hartung* v. *Witte*, 59 Wis. 285; *Thornton* v. *Tramwell*, 39 Ga. 202; *Rawson* v. *Inhabitants*, 7 Allen, 125; *Ayer* v. *Emery*, 14 id. 67; *Packard* v. *Ames*, 16 Gray, 327.

A mere agreement not to assign without the lessor's written consent, does not imply a right of re-entry on breach of such agreement. *Barnes* v. *McCubbin*, 3 Kan. 221; *Shaw* v. *Coffin*, 14 C. B. N. S. (108 E. C. L.) 372; *Hague* v. *Ahrens*, 53 Fed. Rep. 58; *Crowley* v. *Price*, L. R. 10 Q. B. 302; *Johnson* v. *Gurley*, 52 Texas, 222; 1 Taylor on Landlord and Tenant, (8th ed.) sec 291.

The covenant in the lease that "neither he (the lessee) nor his legal representatives" would assign the lease without the lessor's consent, did not bind Russell, the lessee's assignee, not to assign without the like consent. *Expressio unius est exclusio alterius. Chipman* v. *Emeric*, 5 Cal. 49; *Doe* v. *Smith*,

5 Taunt. 795; *Barron* v. *Duncan,* 6 La. Ann. 100; *Siefke* v. *Koch,* 31 How. Pr. 383; *Jones* v. *Jones,* 12 Ves. 186; *Gregson* v. *Harrison,* 2 T. R. 426; *Pennock* v. *Lyons,* 118 Mass. 92; *McCormick* v. *Stowell,* 138 id. 431; *Lynde* v. *Hough,* 27 Barb. 415; *Emerson* v. *Simpson,* 43 N. H. 475; *Hansen* v. *Meyer,* 81 Ill. 321; 2 Platt on Leases, 265; 1 Taylor on Landlord and Tenant, (8th ed.) secs. 408, 403, note, 407, note; 1 Wood on Landlord and Tenant, (2d ed.) 715, note; *Page* v. *Palmer,* 48 N. H. 385.

The assignment by the lessee to Russell, and with Trainor's consent, constituted a new contract between Trainor and Russell, and did not carry with it a provision for re-entry by Trainor in case Russell made an assignment without Trainor's assent. *Brummell* v. *McPherson,* 14 Ves. 173; *Laboree* v. *Carleton,* 53 Me. 211; *Walsh* v. *Martin* 69 Mich. 29; *Van-Vranken* v. *Railroad Co.* 55 Iowa, 135.

The reason of such holding is this: By assenting to the first assignment the lessor enters into a new contract with the assignee, which will not, without express stipulation, carry with it the provision for re-entry contained in the lease. 1 Wood on Landlord and Tenant, (2d ed.) sec. 276; 1 Taylor on Landlord and Tenant, (8th ed.) sec. 286, note; *Chipman* v. *Emeric,* 5 Cal. 49; *Voris* v. *Renshaw,* 49 Ill. 425; *Pennock* v. *Lyons,* 118 Mass. 92; *Murray* v. *Harway,* 56 N. Y. 337; *Dakin* v. *Williams,* 17 Wend. 448; *Siefke* v. *Koch,* 31 How. Pr. 383.

Messrs. WINSTON & MEAGHER, for the appellee:

A covenant instead of a condition will not be implied against the clear intentions of the parties. Woodfall on Landlord and Tenant, 313; 3 Kent's Com. 432; Wood on Landlord and Tenant, (2d ed.) 623, sec. 299; Washburn on Real Prop. 426-430.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of forcible detainer, brought by John W. Trainor, against W. J. Kew, to recover the possession of a certain store-room, known as No. 71 East Harrison street, Chicago. In the circuit court a trial before a jury resulted in a verdict and judgment in favor of the plaintiff, and on appeal to the Appellate Court the judgment was affirmed.

It appears from the record that Trainor, on the first day of April, 1892, leased the premises in controversy to E. Gonzalez, from April 1, 1892, until March 31, 1895, for the sum of $1800, payable in installments of $50 each month, at the beginning of the month. The lease, among other provisions, contained the following: First, that at the expiration of the specified term, or sooner determination thereof by forfeiture, he, the lessee, will yield up said premises to the lessor; second, "that neither he (the lessee) nor his legal representatives, will underlet said premises or assign this lease without the written assent" of the lessor being first had; third, that if default be made in any of the covenants in the lease, it should be lawful for the lessor to declare the term ended and re-enter upon the premises, and again enjoy the same as in his former estate; fourth, that if the term shall be ended in any way, and the lessee should remain in possession, he should be deemed guilty of a forcible detainer of the premises under the statute, and "be subject to all the conditions and provisions above named," and to removal; fifth, that the lessee waived notice of the election of the lessor to declare the lease ended under any of the provisions of the lease.

Gonzalez entered into possession of the premises under the lease, and carried on the cigar business until June 13, 1892, when he agreed to assign his lease to O. G. F. Russell. The lessor consented to an assignment of the lease to Russell, by a written indorsement upon the back of the lease, as follows:

"I hereby consent to the assignment of the within lease to O. G. F. Russell, on the express condition, however, that the assignor (lessee) shall remain liable for the prompt payment of the rent and performance of the covenants on the part of the second party, as therein mentioned, and that no further assignment of said lease or sub-letting of the premises, or any part thereof, shall be made without my written assent first had thereto.

"Witness my hand and seal this 13th day of June, A. D. 1892.       J. W. Trainor. [Seal.]"

At the same time Gonzalez and Russell signed and sealed an indorsement on the lease, as follows:

"For value received, I hereby assign my right, title and interest in and to the within lease unto O. G. F. Russell, his heirs and assigns, and in consideration of the consent to this assignment by the lessor, I guarantee the performance by said O. G. F. Russell of all the covenants on the part of the second party in said lease mentioned.

"In consideration of the above assignment, and the written consent of the party of the first part thereto, I hereby assume and agree to make all the payments and perform all the covenants and conditions of the within lease by said party of the second part to be made and performed:

"Witness my hand and seal this 13th day of June, 1892.
       E. Gonzalez,    [Seal.]
       O. G. F. Russell. [Seal.]"

After the assignment Russell went into the possession of the premises, and occupied the same until October 31, 1892, when, without the knowledge or consent of the lessor, he assigned the lease to appellant, Kew, and turned over the possession of the premises to him. On December 2, 1892, the appellee, Trainor, served a written notice on Russell and Kew that the assignment was contrary to the covenants of the lease; that he had elected to terminate the lease, and demanded pos-

session of the premises. The appellant refusing to surrender possession, this action was brought.

It is first claimed by counsel for appellant that the clause in the lease whereby the lessee agreed that "neither he nor his legal representatives" would assign the lease without the lessor's written consent, was a mere covenant, and did not constitute a condition upon which the term was held. Upon this branch of the case the lease contained the following provisions: "It is further agreed by the said party of the second part (the lessee), that neither he nor his legal representatives will underlet said premises, or any part thereof, or assign this lease, without the written assent of the said party of the first part (the lessor) had and obtained thereto." And further: "It is expressly understood and agreed by and between the parties aforesaid, * * * if default shall be made in any of the covenants or agreements herein contained, to be kept by the said party of the second part, his executors, administrators and assigns, it shall be lawful for the said party of the first part, his heirs, executors, administrators, agent, attorney or assigns, at his election, to declare said term ended, and into said premises, or any part thereof, with or without process of law, to re-enter," etc.

There is nothing ambiguous or uncertain in regard to this portion of the lease. In plain terms the lessee agrees not to underlet or assign the lease without the written assent of the lessor. Then follows the mutual agreement of the lessor and lessee that if default should be made in any of the covenants or agreements of the lessee, (which included the covenant not to assign the lease without the written assent of the lessor,) then the lessor had the right to declare the term ended, and re-enter. This is not a mere covenant not to assign, but it is a power of re-entry for a breach of a covenant, and this, as declared by Taylor on Landlord and Tenant, (sec. 278,) has the force of a condition. It may be true that in the construction of deeds courts will incline to interpret the language

as a covenant, rather than as a condition. (*Gallaher* v. *Herbert,* 117 Ill. 160.) But the intention of the parties to the instrument, when clearly ascertained, must control. (4 Kent, 132.) Here, there is no room to doubt what the intention of the parties was. The intention is declared in plain language. The lessor, in making the lease, inserted the clause prohibiting the lessee from assigning, in order that he might be enabled to prevent a tenant from being forced upon him whom he did not wish to occupy his property. But of what avail is that clause in the lease unless it is a condition upon which the term depended? Take away the right of forfeiture and re-entry, and the covenant of the tenant not to assign the lease is of no avail whatever. Where a lease contains no provision forbidding the lessee from assigning the lease, he may, if he so desires, transfer the lease without the consent of the landlord; but at the same time it may be regarded as well settled that the lessor, by the contract of letting, may reserve to himself the right to look for the payment of his rent and the preservation of his property to the person to whom he leased, rather than to be compelled to rely on any reckless, irresponsible person that his tenant may see proper to shift upon him.

But it is said the assignment complained of by appellee was not made by the lessee, but by the lessee's assignee, and the lease conferred only a right of re-entry in case the lessee or his legal representatives should assign the lease without the consent of the lessor. It is not denied that Gonzalez, the original lessee, was bound to perform all the terms and conditions of the lease. Russell, by the assignment and acceptance indorsed on the lease, became obligated to perform all the terms and conditions of the lease in as full and complete a manner as the original lessee. By reference to the written consent of the lessor that the lessee might assign the lease to Russell, the lessor expressly stipulated that no further assignment should be made without his written consent, and Russell, the assignee, in consideration of the consent of the lessor to

the assignment, expressly agreed to perform all the covenants and conditions of the lease. By the assignment Russell assumed the position of the original lessee, and was substituted to his rights. He had the same powers of the original lessee, and no other. He might assign the lease to another with the consent of the lessor, but without that consent he could make no assignment without incurring the risk of forfeiture.

But it is said the assignment by the lessee to Russell, and Trainor's consent to such assignment, constituted a new contract between Trainor and Russell, and did not carry with it a provision for re-entry by Trainor in case Russell made an assignment without Trainor's assent. This position is predicated on *Dumpor's case*, 1 Smith's Leading Cases, 119. In speaking of this case, Washburn, in his work on Real Property, (vol 1, p. 472, 4th ed. note,) says: "*Dumpor's case* has always been, it is believed, a stumbling block in the way of the profession, and a writer of much discrimination, in an article in 7 Am. Law Rev. 616-640, assumes that the case was originally 'without foundation in the law of conditions;' 'was without subsequent confirmation by decision' until *Brummell* v. *McPherson*, 14 Ves. 173; that 'it had no greater claim to be recognized at that time as settled law than any other venerable error;' that 'since that recognition it has, with hardly an exception, been confirmed by no decision,' and has been, with almost entire uniformity, disapproved of in regard to the doctrine it propounds, and that 'the idea on which it was actually founded has been entirely controverted by modern decisions.' "

In the *Dumpor case* it was held that a condition not to alien without license is determined by the first license granted. But the provision against the assignment, in that case, was entirely different from the clause in the contract under consideration. There the proviso was that the lessee or his assigns should not alien to any person or persons without the special license of the lessors, and the lessors afterwards licensed the

lessee to alien the land to any person or persons.   Here the
license to assign was expressly limited to a particular person,
O. G. F. Russell, and on the condition that no further assign-
ment of the lease should be made without the written assent
of the lessor, and in addition, Russell, the assignee, cove-
nanted that on consideration of the license he would perform
all the covenants and conditions of the original lease to be
kept and performed by the lessee.   There is such a wide dif-
ference between the case cited and the case under considera-
tion that we do not regard the former case one which should
control here, even if we were inclined to follow the *Dumpor
case.*   We perceive no reason why the rule that a license once
granted removes the condition, may not be controlled by the
contract of the parties.   The stipulations in the first assign-
ment are plain, and we see no reason why they did not carry
with them the provisions for re-entry contained in the lease
for a violation of its provisions.

The ruling of the court on instructions has been criticised,
but without stopping to examine in detail each instruction
given or refused, we are of opinion, after carefully examining
the instructions, that the law as given by the court was sub-
stantially correct.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*