## JOSEPH OSWALD

### *v.*

## PETER WOLF.

*Filed at Ottawa November 15, 1888.*

1. APPEAL—*what matters to be considered—on appeal from Appellate Court.* An appeal from the Appellate Court brings to this court only such matters as might lawfully have been considered in that court, and when that court has dismissed the appeal to it for want of jurisdiction, that question only can be considered in this court. If this court finds that the Appellate Court had jurisdiction, correct practice requires that the order of dismissal be reversed, and the cause remanded to that court, with instructions to find upon the issues of fact and render final judgment on the errors assigned, otherwise this court will affirm the order of dismissal.

2. SAME—*want of jurisdiction—dismissal—as to any further action.* Where the Appellate Court has no jurisdiction of an appeal, all it can do is to dismiss the same; and no mandate can issue from that court to the court below, and any attempt to issue the same will be void for want of jurisdiction.

3. SAME—*whether freehold involved.* Where the owner of land claims title in fee to the right of way over an adjoining tract, and files a bill to enjoin the defendant from interfering with its use, and to compel him to remove obstructions thereon, and his claim of title is denied by the defendant, a freehold will be involved, and the Appellate Court will have no jurisdiction of an appeal by the defendant from a decree granting the relief sought.

4. An estate of inheritance in real property, whether it be a corporeal or an incorporeal hereditament, is a freehold estate.

5. SAME—*former decision.* The language employed in *Lucan* v. *Cadwallader,* 114 Ill. 285, is broad enough to include inheritable easements or easements for the life of the grantee, and in holding that a freehold is not involved therein, is incorrect, and, in so far as inconsistent with the rule now announced, is not to be regarded as authority.

6. EASEMENT—*grant of right of way—whether a mere easement, or a grant of the land.* The owner of a ten-acre tract of land conveyed the west one-third thereof in fee, and for the benefit of the land so conveyed, and as incident thereto, a right of way fourteen feet wide over the remainder of the tract, to a public street: *Held,* that the grant of the strip described as a right of way was not of the land, but created

an easement therein for the land conveyed, and a servitude upon the land over which it was granted.

7. SAME—*whether in gross, or appurtenant.* It will never be presumed that the grant of a right of way, or easement, is in gross, when it can fairly be construed to be appurtenant to some other estate.

8. Such an easement is an incorporeal hereditament, though imposed upon corporeal property, and consists simply of a right which, in its nature, is intangible, and incapable of being the subject of livery. It lies only in grant by deed. It is not divisible from the estate to which it is appurtenant, and passes by the conveyance of the principal estate, as an appurtenance thereof.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

Mr. PERRY A. HULL, for the appellant.

Mr. ELMER W. ADKINSON, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill in chancery, filed by appellee, Wolf, against appellant, in the Superior Court of Cook county. The bill alleges, in substance, that in December, 1855, one Peter Duffy, being the owner in fee of a certain tract of land in Cook county, lying on the west side of and adjoining Halsted street, containing ten acres, conveyed to the complainant the west one-third of said tract, and also, at the same time and by the same deed, conveyed to the complainant the right of way over a strip of land fourteen feet in width, particularly describing it, and running from said west one-third of said tract, east through the center of the remaining two-thirds of said tract, to Halsted street; that the complainant, in pursuance of said conveyance, entered into possession of said west one-third of said tract, and has ever since continued in possession thereof; that the defendant afterward became possessed of the remaining two-thirds of said tract, subject to the complainant's right of

way over the same, and has recently erected obstructions upon said right of way, so as to render it impossible for complainant to use the same. The bill prays that the defendant be decreed to remove all obstructions from said right of way, and permit the complainant, and those claiming under him, an unobstructed passage over the same, and to forever maintain said right of way in condition to be used by the complainant and those claiming under him, and a general prayer for relief. The defendant, by his answer, among other things, denied and put in issue the complainant's title to said right of way, and setting up title and exclusive right of possession in himself to the strip of land upon which the same is claimed to be located.

The cause coming on to be heard, on pleadings and proofs, the court rendered a decree establishing said right of way in the complainant, and perpetually restraining the defendant from obstructing the same, and from hindering and impeding the uninterrupted use of the same by the complainant, his agents, servants or assigns, and also requiring the defendant, by a certain day, to remove the obstacles from said right of way, in such manner as to enable the complainant to use and enjoy the same. On appeal by the defendant to the Appellate Court, an order was entered by that court, "that said appeal be dismissed out of this court for want of jurisdiction," and for costs. This appeal is prosecuted from that order.

The cause having been certified to this court as involving questions of law of such importance as that they should be passed upon by the Supreme Court, two questions only remain for our consideration.

It is manifest, from an inspection of the record, that the sole ground for the entry of the order dismissing the appeal in the Appellate Court was that a freehold was involved, and that court was therefore without jurisdiction. By the 8th section of the act to establish Appellate Courts, amended June 6, 1877, (Session Laws, 1887, p. 156,) it is provided in what cases appeals to or writs of error from the Appellate

Courts can be prosecuted, and cases involving a freehold are expressly excluded, while by that section of the statute and the 88th section of the Practice act, as amended June 3, 1879, it is provided that appeals from and writs of error to trial courts, in all cases in which a freehold is involved, shall be taken directly to the Supreme Court. If, therefore, a freehold was involved in the determination of the errors assigned upon the record, the appeal to the Appellate Court could confer no jurisdiction upon that court, and its order was properly entered.

The question first for consideration is, what does this appeal bring to this court for its determination? It is contended that "if this court should hold that a freehold is involved, then the case is properly before this court for determination on all the questions of law and fact involved." The point sharply made is, that the order of the Appellate Court dismissing the appeal left nothing to be done but to carry into effect the judgment of the court below, and that therefore the judgment of the Appellate Court was final, and an appeal upon the merits is allowed by the statute.

The statute referred to (Rev. Stat. chap. 110, sec. 90,) is as follows: "In all criminal cases, and in all cases where a franchise or freehold or the validity of a statute is involved, and in all other cases where the sum or value in controversy shall exceed one thousand dollars, ($1000,) exclusive of costs, which shall be heard in any of the Appellate Courts upon errors assigned, if the judgment of the Appellate Court be that the order, judgment or decree of the court below be affirmed, or if final judgment or decree be rendered therein in the Appellate Court, or if the judgment, order or decree of the Appellate Court be such that no further proceedings can be had in the court below except to carry into effect the mandate of the Appellate Court, any party to such cause shall be permitted to remove the same to the Supreme Court by appeal or writ of error," etc.

35—126 ILL.

The contention of counsel is predicated upon the last clause of the section as quoted, providing for appeals and writs of error where the order of the Appellate Court is such that no further proceedings can be had in the court below except to carry into effect the mandate of the Appellate Court. It is apparent that no mandate issued, or, if that court was without jurisdiction, could issue, from the Appellate Court to the court below. Any attempt to make such an order, thereby transcending the limit of its jurisdiction, would be void. (*Kenney, Exrx.* v. *Greer,* 13 Ill. 432.) Nor was the order entered by the Appellate Court a final order in the cause, or made in a case "heard in the Appellate Court upon errors assigned," within the contemplation of the statute. What that court did, was, by its order, to refuse to entertain the appeal for any purpose, or to make any order in the cause, final or otherwise.

This court, exercising its appellate jurisdiction, sits, in cases of appeals, to review the final orders, judgments and decrees of the tribunals from which the appeal is prosecuted, upon the record there made, and we have repeatedly held that nothing can be considered on appeal that was not properly presented for adjudication in the lower court,—that nothing was brought up by the appeal that was not before the lower court for its determination. If the Appellate Court had no jurisdiction to hear the case on errors assigned, it could only consider the question of jurisdiction, and enter, as it did, an order dismissing the appeal, and for costs of that court, against the party that had wrongfully intruded therein.

This appeal would bring to this court only such matters as might lawfully have been considered in the Appellate Court by virtue of the appeal to that court, and therefore only the question of jurisdiction can be considered here. If it be found that no freehold is involved, correct practice would require that the order of dismissal be reversed, and the cause remanded to the Appellate Court, with instructions to find upon the issues of

fact, and render final judgment upon errors assigned. (*Ottawa, Oswego and Fox River Valley Railroad Co.* v. *McMath,* 91 Ill. 104.) If a freehold is involved, this court is powerless to do more, on this appeal, than to affirm the order of the Appellate Court.

The view here expressed is not in conflict with *International Bank* v. *Jenkins et al.* 104 Ill. 143, or *Gage* v. *Scales et al.* 100 id. 218. In those cases the judgments and orders of the Appellate Court were upon the merits, and necessarily final. The latter case, it is true, was held to involve a freehold, but the question of whether the appeal would lie from the trial court to the Appellate Court, or from that court to this, or what questions would be presented on appeal to this court, was not presented or determined.

The remaining question will be briefly considered. The complainant claims title in fee to the right of way over defendant's land. His title thereto is directly put in issue, and established by the decree. It is clear that the right of way, and whatever estate complainant had therein, is involved. Looking to the allegations of the bill, and the evidence offered to sustain them, it is seen that complainant's grantor, claiming to own the ten-acre tract of land described in the bill, conveyed to complainant the west one-third of said tract in fee, and for the benefit of the land so conveyed, and as incident thereto, the right of way in question over the remaining two-thirds of said land, from the said west one-third, to a public street. The grant of the strip described as right of way was not of the land, but created an easement therein in the land of complainant, and a servitude upon the land over which it was granted. (Washburn's Law of Easements and Servitudes, 26.) It is clear that the easement here granted was appurtenant to the estate of complainant, for, independently of the clear implication to that effect from the nature of the grant, it will never be presumed that the grant is in gross, "when it can fairly be construed to be appurtenant to some other estate."

(Ibid. 27-36.) "These easements," it is said, "are strictly incorporeal hereditaments, though imposed upon corporeal property, and consist simply of a right which is, in its nature, intangible, and incapable of being the subject of livery." (Washburn on Real Prop. 300; 3 Kent's Com. 401-419.) Hence it is said: "It does not lie in livery, but in grant, and a freehold interest in it can not be created or passed otherwise than by deed." *Hawley* v. *Shipman,* 5 B. & C. 221. See 2 Blackstone's Com. 104-237; 1 Preston on Estates, 13.

These incorporeal and intangible rights in or growing out of land, have applied to them the same idea of duration or quantity of estate that is applied to corporeal hereditaments. They are not divisible from the estate to which they are appurtenant, and pass by conveyance of the principal estate as "appurtenances" thereof. (3 Kent's Com. 420; 2 Washburn on Real Prop. 271.) The duration of the estate, or the time for which the enjoyment is to continue, forms the quantity of the estate, and hence, if the grant be of an estate of inheritance, either in hereditaments corporeal or incorporeal, a fee is taken; if for the life of the grantee, only a life estate would be granted. Preston on Estates, 31; 2 Washburn on Real Prop. 271.

It is said by Blackstone, (book 2, p. 106,) that taking the word "fee" as meaning an estate of inheritance, "it is applicable to, and may be had in, any kind of hereditament, either corporeal or incorporeal." Of the former, however, the grantee is said to be seized "in his demesne as of fee, and of the latter that he is seized as of fee," only,—the reason of the distinction being, that while the owner of the easement may own the same, "to himself and his heirs, as fully as he could the land," yet he has no dominion over the land itself, but only the right of subjecting it to the servitude granted. Here, the easement was appurtenant to the estate of complainant in the land conveyed. The grant was by deed to complainant, his heirs and assigns, forever; *habendum* to him, his heirs and assigns, for-

ever. It is clear that an estate of inheritance was granted in the right of way, and that complainant took the same in fee.

An estate of inheritance in real property, whether it be a corporeal or incorporeal hereditament, is a freehold estate. (4 Kent's Com. 24; 2 Washburn on Real Prop. 271; 1 Preston on Estates, 201.) Mr. Preston (at p. 214,) says: "Hereditaments which are incorporeal, as well as hereditaments corporeal, are the objects of this doctrine, and admit of the application of this term. So long as an estate of freehold subsists in the property, that estate will require the denomination of a freehold interest, without any regard to the subject of property in which the estate is subsisting."

It follows, that a freehold is here involved, and that the order of the Appellate Court dismissing the appeal to that court was properly entered, and must be affirmed.

The cases of *Lucan* v. *Cadwallader*, 114 Ill. 285, and *Eckhart* v. *Irons*, id. 469, are not necessarily, from anything appearing in the reported cases, in conflict with the holding here. All estates of inheritance in hereditaments are freeholds; estates less than a freehold are chattel interests. The language employed in the former case is broad enough to include inheritable easements or easements for the life of the grantee, and in holding that a freehold is not involved therein, is incorrect, and, in so far as inconsistent with the views here expressed, is not to be regarded as authority.

Leave will be given appellant to withdraw the record filed herein, to be re-filed for the writ of error from this court, if he so desires.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in this decision.